The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Robert J. Stegman presiding. Thank you, Mr. Bayless. Good afternoon, counsel. This case, the second case this afternoon is number 4-25-0713, Mary Bloomberg versus Micah Reimer. I will ask counsel for the appellant, please state your name. Yes, John Fleming on behalf of the appellant. Thank you. Counsel for the appellant, please state your name, sir. Jim Skinner on behalf of the appellant. Thank you. Mr. Fleming, on behalf of the appellant, you may begin your oral argument at this time. Thank you very much. May it please the court, justices here, Mr. Skinner, I represent Micah Reimer, who is a defendant in this case and also a counter plaintiff. We bring this appeal with regard to three events that occurred at the trial court level, two summary judgments that were filed in order to attempt to refine the issues or limit, narrow the issues, and then third, of course, the ultimate trial that the court brought us to. So, I know that there are multiple issues raised in the brief. I would like to use my time in this oral argument to address four specific issues, which I consider issues of significant importance. Number one, the issue of the judicial admission, which was part of a summary judgment and which turned out, unfortunately, to be a component that shaped part of the trial. Number two, the defamation issue, which is one of the counts of the counterclaim. There's a four-count counterclaim, the defamation issue. Number three, the prejudice caused by the court's intervention during the cross-examination of Mary Bloomberg at trial, which ties into that judicial admission pleading. And then, number four, the issue of the admission made by Jake Bloomberg on that he agreed to provide show assistance on this large cattle heifer that he was selling to my client. And ultimately, he agreed to provide show assistance and admitted he did not come forth with his part of the bargain. A quick primer on the facts of this case, although I'm sure I know counsel is well aware and I'm sure the court has reviewed some of these facts. It's a unique, it's a not as just a sale of cattle, but show cattle. It's a show cattle case. And the reason that's of some significance is there is a huge disparity of knowledge and experience in this business, whereas Jake Bloomberg, who handled all of the sale, both for Mary, we say Mary Bloomberg, but it's really, she stands in the shoes of, by virtue of the probate order, Jim Bloomberg, who is now deceased. But Jake Bloomberg handled all the negotiations for all three show cattle, two that were owned by Jim Bloomberg, one that was owned by Jake Bloomberg. He was very experienced and knowledgeable, and Micah Reimer was not. Micah Reimer needed his help if she was going to move forward at all with any success with this fairly expensive third of the show cattle. You may remember this case by the names of the show cattle. There were three involved in the pleadings and at the trial, but there's only two that are part of this appeal. And those are the two that were owned by James Bloomberg, who is now deceased. They are in the bank and miss bankroll. One was a very expensive cattle that was the in the bank. And now the James Bloomberg was a party in this case for a while. He died suddenly. And then Mary Bloomberg came into play as a representative of his estate by virtue of a probate petition that she signed and an order that appointed her this representative. That probate petition is intimately tied in with the pleadings in this case. It is the only thing that made Mary Bloomberg a party. And she swore to its contents, swore that she knew what its contents were, and it gave her the power to be a plaintiff in this case. I'll reference it as Exhibit H during these proceedings as we did during trial. It's a two-page document entitled Petition for Probate, but it is actually an affidavit and a verified pleading. Okay, so first, on the issue of judicial admission that I want to emphasize. And I cannot emphasize enough how strongly I feel about this and how I feel the law is quite clear. We cited a couple of cases of the court, Constant Products with a K. Constant Products is one of the cases that discusses this quite clearly. The Knauser Heise case. But also, Wigmore on evidence is quoted by the Illinois Appellate Court on this issue. A verified pleading is a judicial admission, and since it's verified, it cannot be contradicted, and it does not become some type of piece of evidence. What it actually does is takes an issue out of evidence. And that's what we attempted to do in this case by way of our summary judgment that we filed in advance of trial, which was denied. Isn't that rule applicable within the case? I do know, yes. A verified pleading from one case is not a judicial admission in another case. It may be evidentiary, but not judicial. And thank you, Judge. And my response to that is this. I do know that there are case law that absolutely says that. But this petition for a probate is intimately part of this case. Mary Bloomberg, it's incorporated into this case, Judge. Mary Bloomberg doesn't become a plaintiff until she asks the court by this sworn petition to have the judicial appointment. And then the judicial appointment is made. And she incorporates those into this case here. So, Judge, my position is, to all justices and the counsel, my position is it is absolutely a pleading that's part of this case. So, I acknowledge your point of law, and I think that that is met quite clearly by operation of law being incorporated into this case. And that judicial admission therein, Mary Bloomberg had the opportunity to state quite clearly whether there was an asset that she was going to proceed with. And more specifically, she identifies three things, personal property, real property, and losses. Personal property, zero. Zero, not an estimate, not a range. Not to be determined, but zero. But moreover, she lists lawsuit. And the lawsuit listed is a separate confidential lawsuit involving the death of her husband, so-called confidential, but it's a separate lawsuit. Everyone agrees. And this lawsuit is not listed. The very pleading incorporated into this case that gives her the power to act as the representative plaintiff, she admits there is no value, no claim left for these two heifers that my client made partial payments on, and that our position is the plaintiff side of it failed to fulfill their part of the bargain, admittedly, failed to fulfill their part of the bargain. Therefore, judges, justices, excuse me, we feel that you have the power to and should address that issue where a verified pleading under oath is made by a party and they must be bound by it. My position is that this oath is part and parcel a strength, a foundational point of our jurisprudence. If something under oath, if a, much less a witness taking oath, but a pleading under oath presented to the court, that must be binding, and I think that's fundamental to our jurisprudence. So therefore, on that point, we respectfully ask that this court remand that issue back and make the determination on summary judgment. Mary Bloomberg is prohibited as the representative plaintiff from recovering for those two cattle in the bank and Ms. Bankroll. Now, issue number two, that actually tied into prejudice to us at trial. There's pretty lengthy three transcripts from the trial of all the evidence. Mary Bloomberg's testimony covers, there's about six pages where we have the colloquy with myself trying to question her, Judge Hogan breaking me off twice, and his words were break it off, and objections by plaintiff's counsel, which not only restricted me in being able to question the witness about that judicial admission, that petition for probate, that affidavit, but it caused great consternation to Mary Bloomberg and the judge even offered for her to have a break and get a Kleenex. And then suddenly I'm not only prohibited in my questioning her about this lawsuit, she says lawsuit, it's not this lawsuit, what is the lawsuit? I'm prohibited from probing that. Suddenly- Isn't your whole position that the confidential lawsuit was not this one? Because you're saying it wasn't listed. And if that's the case, didn't you get that out of the witness? To some degree, she- How can it be more not this case? It either is or it isn't. And it seems as though the only evidence of record was it was not this case. I don't see how examination even gets you any, any better than that. Well, judge, I appreciate that with all due respect. I am then not able to ask, okay, why is lawsuit number two, our lawsuit, our 2021 lawsuit that was already in existence for two years prior to her filing the 2023 petition, I don't get to ask her. What's the difference between these two lawsuits? Why do you remember one? Why don't you remember the other? I'm not even allowed to ask that judge. And so I have a question about this. Um, if I understand your position, you are complaining that you sought to pursue a line of cross-examination with regard to Mary and the trial court, uh, stopped you from doing so and improperly so affecting your ability to put on your case. Is that correct? That's half of it. And then the other half is the manner that that occurred then caused me to look like a bad guy and I get prejudiced. Uh, what about the question of the nature of the testimony you were prohibited from eliciting? Did you make an offer of proof? I did not make an offer of proof. And as you could tell from the judge's, um, statements, we will not go into that. The confidential, he prohibited me from going into the confidential lawsuit in any respect. Did you make an offer of proof when a judge objects to your line of inquiry? Well, if he stops me from asking about things that he considers confidential for whatever reason, I can't even make an offer of proof on confidential information if he stops me. That's my position, judge. Did you offer, did you seek? You say, judge, we wish to make an offer of proof. I want to ask your questions. Well, I, I didn't say the words offer of proof judge. I do know that I did seek to ask questions about the confidential lawsuit that I was stopped from arguing on appeal that the trial court's failure to permit a line of inquiry was erroneous and requiring a reversal when we don't know because you didn't seek an offer of proof, what her testimony would have been. Well, I understand that. I have seen that in many cases, but when it is. My being stopped because it is confidential, a judge determined it's confidential. I can't even make an offer of proof because I don't know what she's going to say about the nature of that lawsuit. And I, I did not ask for a, um, send the jury out and me question her again, but the judge said it's confidential. We're not going into that. So that's my, that's my position. Why I couldn't do an offer of proof. Um, that's my position. The, I want to emphasize this, um, uh, further. The second half of that is how that places me in an entirely prejudicial position, I say you need look no further than the result that happened in this case, the plaintiffs not only got a verdicts in their favor, the jury awarded a punitive additional amounts on top of the verdicts that were not based on any evidence at trial. And, um, one of the clear, um, possibilities, if not likelihood is that I look like a horrible person because I'm trying to cross-examine Mary Bloomberg on an issue that the judge will not let me go into. And she gets emotional and wants, needs a Kleenex. Okay. It sounds like you're trying to do more of that. It sounds like the judge stopped you from doing more of that. I'm not sure how that's a mark in the favor of your argument. I think, I think you're saying you wanted the right to look worse in front of the jury. I, I, with all due respect, judge, I don't look at it that I don't look at it that way. My first position is that I'm prohibited from going into it. And the second position is I'm prejudiced by me pushing for that and being rebuffed by the judge. And then once the judge rebuffs me, uh, the, the witness slash wife of the decedent slash, um, personal representative in this case gets very, uh, um, emotional and the judge is on her side. The plaintiff's attorney is on her side, obviously. And I'm left as looking very bad in front of the jury. My position is it affected. Did you get any rulings from the judge? What if you did, did that make the judge on your side? I mean, that's a little out in left field for you to say that because the judge ruled on one point of law in a way that favored the other side, instead of you, that the judge was on their side. Judge, I would say, put it this way. If you look at judge Hogan's, um, statements in the, in the record, he interrupts and stops me without even an objection from counsel. He interposed himself to stop me. Um, let's break it off. He said that twice. So had he not all be ruled on the scope of that question? I don't think so. Um, I don't, I don't think so. I don't think there was an objection when he first broke into me. I read it again yesterday and I did not see an objection before he interjected, um, that, that was, uh, not just him being on the other side. Judge that is him being stopping me against me, showing the jury I'm doing something wrong without an objection from, uh, counsel because it's a supposed confidential other settlement to however he perceived that. Um, I, I may be, I see red on my time. I may be running out of time. You have three minutes to go counsel. Yes, I see. I see that. Uh, I want to talk about the defamation, uh, issue, which I think is a, uh, a solidly, um, undisputed both under the law and under the true facts as brought out, uh, a in Jake Bloomberg's deposition and B, um, I had to, um, squeeze it from him and during cross-examination, but then he admitted it at trial too, that he used the words in a public place to my client, you stole those cattle and the word is stole. Um, he, um, therefore affirmatively stated the commission of a crime by my client in a public place and, uh, admitted that, and in my view, that is clearly an admission of defamation per se under the, under the law. And the only steps forward from that point would have been for the judge to properly say, okay, that's defamation committed as a matter of law and liability. Now let's go to what are the damages from that and all the other issues. Uh, how many people heard it and that kind of thing. What did it affect? My client's reputation would be issues for damages. And what happened in this case is the judge denied us summary judgment, uh, on that issue. And in the face of the, the clear and unequivocal statements from Jake Bloomberg, and then at trial, we, um, get a, um, zero on our, I think it's count three of our counterclaim and in the face of his admission. And I would say that is probably and likely a result of the prejudice that the jury then had against me and the rest of the case after I'm trying to. Quote, beat up a poor Mary Bloomberg. Um, contrary to what the judge thought I should do by interrupting me. That's how that prejudice ties into that, um, result of a, um, zero on the counterclaim count three for defamation. My, I respectfully request that issue, that defamation issue be remanded and set back for determination on liability, uh, by the court as a matter of law. And then, uh, remand that for damages on that defamation issue. The, um, there is no question that the cattle were voluntarily transferred both by possession and by registration to Micah Reimer prior to, um, Jake Bloomberg making that, uh, public statement. The last thing I want to try to squeeze into my one second, you'll have an opportunity to address this again in rebuttal. Mr. Skinner, on behalf of the FLE, you make your argument at this time, sir. Thank the court and may it please the court and the justices. Um, I will be brief in my, um, first I will start again with the judicial admission issue. Um, I think that the justice is correct in indicating that for one, that wasn't even in this case and to try to bootstrap a petition to, for probate into something in this case, I would argue that the petition for probate is not what gave her authority, but the letters of office are what gave her authority. Um, those are intent. I don't know that a petition for probate could ever constitute a judicial admission, even in the case that it was in, but, um, that's not what you guys have to, you have to decide. Um, and I've cited the cases. I don't think I need to go into those sites again. I mean, it's pretty evident what the law is. Um, this kind of statement is certainly not what the law envisions as a judicial admission. It's not something that is a concrete fact solely within her knowledge. I mean, that's what the law says. And her testimony on that issue says that, I mean, she says, I didn't know about this. Um, and I agree with the counselor, the pellant that, you know, there's no dispute that the lawsuit she was talking about in that petition was not this one. Um, that is clear. Um, and, but also there is no evidence that she knew any of the details of this lawsuit when she executed that. And I think that alone would preclude it from being a judicial admission. Um, and it'd be, it'd be irrational to think, to take this argument to that this lawsuit is pending for two years in that time period, Mr. Bloomberg dies and that somehow by executing that petition for probate, that she intended to abandon this lawsuit and, and intended that there was nothing to come with this lawsuit. That would be an irrational thought in her head and would make no sense. Um, I think if the facts are analyzed on this issue, it based on the law, that it's pretty evident that that cannot be a judicial admission. Um, moving on to the limitation of evidence issue again, I concur with the questions, the justices about this. She, how any fact in that confidential lawsuit, which is conceded by everyone not to have been, this one would have even any relevance in our case. I wouldn't, I couldn't imagine how it could have relevance. Um, I, because that would have been the next objections. And I think the judge would have said, well, yeah, how is it relevant? What any, and that's where those questions were going about what that lawsuit was, but the facts of what that lawsuit were, that's what's and how that has any bearing on this case. Um, I, I can't understand how that would have any bearing on this case. And yes, Ms. Bloomberg was emotional. Her husband died. Um, but that was as a result of counsel's questions of her. He didn't have to go into that. He's it's not like somebody opened the door. Um, and he had to go into this confidential lawsuit because it was already conceded that wasn't this one that we're talking about right now. So, um, I, I don't, I just don't see how that limitation of evidence could have any way prejudiced prejudices case, because I don't, don't see how it could have led to any evidence that somehow would have helped them in their underlying case. I mean, it's just for lack of better word, beating a dead horse. We already know what it is. I mean, and we know it wasn't this one. Um, so, so we'll go with that. Um, defamation. I think that the, the, the key issue on this defamation is counsel would let you, would lead you to believe that somehow this was a clear statement made by Mr. Bloomberg when the evidence in the testimony, which I'm sure you've read, he said, isn't it stealing if you aren't going to pay for the cattle? That's what he testified to. There was other testimony by a bystander, Eric Lee also, um, um, credibility of witnesses and analyzing their stories is a province of the jury. It's extremely high standard to overturn, you know, what they saw there in that courtroom, um, and what they, how they observed the witnesses and their demeanors, um, and you know, to grant a new trial trial on that issue, the, the opposite conclusion must be clearly evident, or the verdict must be unreasonable, arbitrary, and not based on the evidence. Well, there's contra at minimum, there's contradictory evidence. Um, and so to meet that standard, I don't think it's possible in this case, based upon the, I mean, if the facts are the facts, I mean, what happened, there was a confrontation, we know what happened. Um, but there isn't, it's not clear enough. I mean, it clearly, it certainly wasn't clear enough because if it was, the judge would have given summary judgment and he didn't. Um, so he left it up to the trier of fact, and they made a conclusion based on the evidence. And so a question I forgot to ask Mr. Fleming, I want to ask you, and I will ask Mr. Fleming and rebuttal, the trial court in this case ruled that the statements of, um, Mary Bloomberg were not, did not constitute traditional admissions. Is that correct? I believe so. Yes. And that's an issue on appeal. What is our standard of review regarding that issue? Um, well, off the top of my head, um, I mean, I did not, to be honest, I did not look that up. Um, I would hate to speculate. If you have nothing to offer immediately, that's okay. I don't want to take up your time. I will just ask Mr. Fleming if he has any thoughts about it. Rebuttal, you may otherwise continue. Okay. Thank you, Your Honor. Um, and really that that's, that's all that Mr. Fleming addressed. I don't really think that I need to go down too much into the other issues in my remaining time. I would just say on this issue of Mr. Bloomberg's breach of contract regarding the show assistance. Again, if the evidence, for one, it's up to the jury and I've cited to the Hindley case about, they decide the terms of contracts. Um, and you know, they, they have decided that was not a term of the contract. And that's a manifest way to the evidence issue. Um, Ms. The, the, Ms. Micah admitted that she never even told Jake where he was, she was showing the cattle, I mean, I guess I better get some background on that cause that's not something I deal with these cattle cases a lot, so I understand what it is. But so they take these cattle to shows and at the shows, they do this various grooming of the cattle to make them look good. And that's what we're talking about here. Um, but, but Micah admitted that she did not even tell him where she was going in the show to show. Um, she also, there's text messages, which are extensive in this case. Um, and she never mentions to him a single time, come help me come do this. So to, to, for the jury to, I don't see how the jury could have concluded that was an element of this case based on her own testimony. Um, and it certainly, um, couldn't, the verdict certainly wasn't against the manifest way to the evidence. And so the other issues I don't, I've already made the same kind of arguments about those things. And I've said that the facts, I don't think that me going into that would really help much at this point. Um, and so I think I'm, I would be finished with my argument at this point. Thank you counsel, Mr. Fleming, you remake your rebuttal argument at this time, but as I like your thoughts, you are appealing in part on the grounds that the trial courts ruling that Mary Bloomberg's, uh, statements did not constitute a judicial admission was incorrect. What is our standard of review with regard to that issue? My review, sir, you're coming in. Strangely, your, your, your sound was a little bit mixed. I couldn't understand it. Will you try again, sir? Yes, yes, sir. Uh, can you hear me now? Well, you still have an echo, but I'll, I'll try to deal with it. I'm just Skinner. If you could mute your microphone, that might be the source of the loop. Can you move your microphone?  Fleming. Okay. Try again. Okay. Okay.  Matt, say you see. Well, go ahead. We'll try to follow what you're saying. Oh, okay. Okay. Uh, I believe that you, I submit that the standard of review is DeNovo. Uh, does this judicial admission issue? It certainly wouldn't be at the judgment stage. It would also be at a, um, directed verdict or the judge ruling as a matter of law, uh, her, her, um, judicial admission, which, which, uh, under all of the law says you don't take any more proof. The issue is decided. So I think on the, um, may I proceed judge? Am I, am I, am I still coming in? We can hear me. We can make it out. I think, go ahead. Oh, very good. On the issue that I did not reach in my opening arguments on show assistance, Jake Bloomberg, I cited the pages at trial where this came up. He admitted in order to induce Mike to buy the expensive cow, he agreed to provide help her and an inexperienced person with no assistance. And then he said that he admitted, I did not do that. I did not carry through with that in our view, without a doubt that that supports a new trial for the jury to ignore his admission of the, the, in that case, he's acting on behalf of plaintiff plaintiff plaintiff's admitted breach of the contract. So we're asking for that support, a new trial, uh, in this case, Lastly, on the defamation issue, uh, CalTel tries to say that it is questionable or, um, disputed in front of the jury. It was not disputed at, uh, the words were not disputed at summary judgment. The Jake Bloomberg did not mince any words in his deposition. He said that she stole those cattle in the public place. Counsel, can I ask you though, on summary judgment that was denied, isn't it pretty established under Illinois law that you cannot appeal from the denial of summary judgment because it merges into the trial record. So don't we have to look at the trial record on this issue, not the summary judgment record? Well, I don't think you have to look at the, um, plaintiff Jake Bloomberg's testimony at trial to change what happens at summary judgment. If the summary judgment was clear and free from doubt. I think that it's not appealable counsel. You can't appeal from the denial of summary judgment. So that leaves us looking at the sufficiency of trial, whether a post-trial motion or motion for direct to verdict should have been granted, but we're only looking at the trial evidence. And I will say this, and I looked closely at that yesterday, at trial, I had to squeeze it out of him, Jake Bloomberg admitted the same words to his judge that he said at summary judgment, even if I'm not allowed to argue summary judgment was improper, he admitted saying the same words. You, you stole those cattle. And his answer is, yes, I said those words. So he admitted saying those words, forget it. Who cares what other words he might have said. Those words are in the public place, which has a major say in this, in this state. It is my position. So that's all I have to say on my time. Thank you.  Thank you counsel. The court will take another under advisement. We will issue an opinion in due course, and we will now stand in recess.